IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TONY D. JENNINGS, | § | |
| | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | 2:04-CV-0039 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
|    Defendant.[1] | § | |

**REPORT AND RECOMMENDATION
TO REVERSE THE COMMISSIONER'S DECISION
AND REMAND FOR FURTHER ADMINISTRATIVE ACTION**

Plaintiff TONY D. JENNINGS, brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability, and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED and the case REMANDED for proceedings consistent with this opinion.

I.
THE RECORD

Plaintiff applied for disability insurance benefits and supplemental security income (SSI)

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue should be substituted as the defendant in this suit.

benefits under Titles II and XVI of the Social Security Act on March 22, 2000, with a protective filing date of January 20, 2000. (Transcript [hereinafter Tr.] 61-63; 159-161). Plaintiff alleges an onset date of November 27, 1999 (Tr. 13, 61, 159) and claims his impairments include gout and hepatitis C, which results in severe fatigue (Tr. 83, 85, 96, 145-46). It was determined at the administrative level that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 13). Plaintiff was born August 16, 1953 (Tr. 61, 159), and the record shows he has a tenth grade education. (Tr. 15, 100). According to plaintiff's Adult Disability Report, he has worked as an operator in the oil field business. (Tr. 84).[2]

Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on September 12, 2001. (Tr. 22-39). On October 3, 2001, ALJ Gary L. Vanderhoof rendered an unfavorable decision, finding plaintiff not entitled to benefits at any time relevant to the decision. (Tr. 13-16). The ALJ determined plaintiff retained, "the residual functional capacity to do at least sedentary work." (Tr. 15). On January 2, 2004, the Appeals Council denied plaintiff's request for review of the decision of the ALJ (Tr.6-8), rendering the ALJ's decision the final decision of the defendant Commissioner. Plaintiff now seeks judicial review.

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support

---

[2] Plaintiff testified that he had some vocational training as an auto mechanic, and that he worked in that capacity from approximately 1975 through 1989. (Tr. 29). The ALJ however, only referred to plaintiff's past relevant work as an oil field operator. (Tr. 15).

the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

III.
<u>ISSUES</u>

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the national economy, and

whether the proper legal standards were applied in reaching this decision. To this extent, plaintiff presents the following issue:

> Whether defendant's finding as to plaintiff's residual functional capacity (RFC) is supported by substantial evidence.

## IV.
## MERITS

Plaintiff argues defendant's finding as to plaintiff's residual functional capacity (RFC), that plaintiff could perform a full range of sedentary work, is not supported by substantial evidence. The ALJ has characterized sedentary work to include, "lifting a maximum of 10 pounds, with occasional lifting and carrying of items of small tools...primarily sitting, with only occasional standing and walking." (Tr. 15).

First, plaintiff argues the ALJ determination that plaintiff's allegations of physical limitations were not credible was improperly based upon an erroneous assessment of plaintiff's daily activities and on plaintiff's failure to seek treatment for his hepatitis C, even though plaintiff repeatedly testified, in his application and in person, that such failure was due to financial troubles.

Second, plaintiff avers the ALJ committed reversible error when he failed to assess plaintiff's work-related abilities on a function-by-function basis as required by 20 CFR 404.1545 (b)(c)(d) and 20 CFR 416.945 (b)(c)(d). As a sub-part to this argument, plaintiff presents the ALJ's failure to evaluate plaintiff's work-related abilities as evidence that the ALJ failed to determine whether plaintiff had any non-exertional impairments which would preclude the use of the Medical-Vocational Guidelines (the "Grids").

Defendant's brief does not directly address plaintiff's contention that the ALJ's

description of plaintiff's daily activities was inaccurate.

Plaintiff argues the ALJ erred by basing his credibility determination in part on plaintiff's daily living activities including plaintiff's ability to drive, personally groom himself, maintain his residence, sit for extended periods and prepare his own meals. (Plaintiff's Brief at 10-11). Defendant does not rebut this argument but instead cites to the medical reports of plaintiff's treating physician, Dr. Craig R. Schaffer, as evidence that plaintiff's allegations regarding his physical limitations were exaggerated. Defendant then adds a discussion of Fifth Circuit law on disabling pain, a discussion of plaintiff's inconsistent earnings record, a discussion of plaintiff's history of drug use and how that testimony was contradicted by the medical records of Dr. Taylor Carlisle, a reference to plaintiff's failure to follow a prescribed treatment plan, and plaintiff's ability to purchase the "luxury items" of beer and cigarettes instead of medication. (Defendant's Brief at 7-8). With the exception of the prescribed treatment plan, there is no indication in the record or in the ALJ's opinion that the ALJ ever considered these factors in making his determination of plaintiff's credibility. In his opinion, the ALJ stated,

> The claimant has symptom-producing medical problems, but I find that his testimony and other evidence do not credibly establish functional limitations to the extent alleged. He stated in the record that he cannot work because of weakness and fatigue. His list of symptoms and disabling limitations included severe fatigue, diarrhea, weight loss, and aching and swelling in the joints due to gout. Although it has been recommended that he take Interferon treatment, he has been unable to do so because of his financial situation. He claims to have tried to get on indigent care but has not been successful in doing so. He testified at his hearing that his gout comes and goes and he spends most of his day lying around watching television. His mother comes to check on him once a week and he has a friend who sees him once a month.
>
> ....
>
> After reviewing the claimant's medical record, symptoms and complaints in the

> light of 20 CFR 404.1529 and 416.929, I find that he indeed has "severe" impairments, but his overall condition does not preclude him from performing a wide range of sedentary work activity. He has alleged several medical problems, but he appears to have exaggerated their severity and the functional limitations they impose. He said he suffers from Hepatitis C and A, and gout, with symptoms of severe fatigue, diarrhea and left knee pain. The medical evidence does not show a degree of limitation that would eliminate sedentary work. Mr. Jennings stated he suffers from Hepatitis C and A, but has done little to treat this problem. He also alleges gouty arthritis with intermittent pain in his left knee, but this condition appears to be under control with medication. It does not appear to produce significant functional restrictions. The claimant's treatment regiment (sic) does not support the alleged severity he has attributed to his liver disease.
>
> The claimant maintains a lifestyle that I find essentially consistent with sedentary work activity. He states that he can drive an automobile and can take care of his personal needs without help. He lives alone and had not required any particular help in maintaining his residence. He watches television and prepares his own meals daily. The claimant appears physically capable of doing sedentary work and mentally capable of doing basic and routine work tasks.

(Tr. 14-15, citation omitted). It appears, as argued by plaintiff, that the ALJ primarily based his opinion as to plaintiff's credibility on his characterization of plaintiff's daily living activities and plaintiff's failure to seek treatment for his Hepatitis C. Specifically, plaintiff appears to argue the ALJ's summation of plaintiff's daily living activities were not representative of plaintiff's testimony of his actual daily living activities. When questioned by his representative, plaintiff testified:

Q: Do you do your own housework?
A: What gets done.
Q: Do you like do the dishes?
A: Yeah, sometimes.
Q: Do you have any trouble doing the dishes?
A: Well, if I do them, like, I'll sit down. I get shaky. Anything I do any more (sic) than like ten minutes, I have to stop.
....

Q: How are you - - do you have any hobbies that you do, or how are you spending your time?
A: Right now?
Q: Yeah.

A:      Just sitting around watching television.  That's all [INAUDIBLE].
Q:      Do you - - what about going grocery shopping?  Do you do that?
A:      My mother does.
Q:      In an average month, how many times would you say you leave your home?
A:      Maybe three, four.
Q:      What kind of places do you go when you leave?
A:      I go to my mother's.  I go with her when she goes to the doctor.
Q:      Does it bother you to sit?
A:      For long periods of time, it does.
Q:      What bothers you if you're sitting?
A:      Just get tired.
Q:      [INAUDIBLE].  How long can you stand?
A:      Ten minutes or so.
Q:      What about lifting?  Is there [INAUDIBLE] that you can lift?
A:      [INAUDIBLE] lift with my left arm.
Q:      Are you left- or right-handed?
A:      Right-handed.
Q:      Right-handed?
A:      Yes, m'am.
Q:      Can you lift a gallon of milk?
A:      No, m'am.
Q:      When you sit too long, can you tell me how long is too long?
A:      20 minutes or so.

(Tr. 30-31).  Comparison of the ALJ's characterization of plaintiff's daily living activities with plaintiff's testimony shows the reference by the ALJ to be flawed.  The ALJ is certainly entitled to assess the credibility of plaintiff's testimony.  However, error is committed if the RFC determination is based upon a misunderstanding or mischaracterization of plaintiff's testimony regarding his daily activities.  Further, defendant failed to even discuss this issue, only stating in his brief that, "...Jennings was able to live on his own, care for his personal needs, prepare meals, do dishes, perform basic home maintenance activities, and drive a car.  (Defendant's Brief at 7). Plaintiff has fully briefed the issue and demonstrated that plaintiff's testimony of his daily living activities are not consistent with sedentary work activity and/or are inconsistent with sustained work activity.  (Plaintiff's Brief at 9-13).

        Additionally, the ALJ referenced plaintiff's failure to follow a prescribed treatment for

his Hepatitis C as evidence of his lack of credibility. However, as argued by plaintiff, his applications and medical records as well as his testimony demonstrate his inability to afford the Interferon treatment for his Hepatitis C. (Tr. 27, 68-69, 90, 96, 145, 148). Defendant argues plaintiff lacked credibility in this regard because plaintiff could afford his gout medication and could afford luxury items of beer and cigarettes. (Defendant's Brief at 8). The record does not, however, reflect the cost of the medicines at issue. Therefore, the inference that plaintiff should be able to afford Interferon treatment because he can afford gout medication and cigarettes has no factual basis in the record. Further, this was not the rationale used by the ALJ. The ALJ referenced plaintiff's inability to afford treatment for his Hepatitis C (Tr. 14), noted Dr. Schaffer's notes wherein the doctor said plaintiff had become discouraged in his pursuit of medical treatment (referencing plaintiff's attempts to obtain indigent care) and noted that plaintiff had done little to treat his Hepatitis (Tr. 15). It is unclear why the ALJ references plaintiff's inability to pay for the Interferon treatment and then finds plaintiff has done little to treat his problem. Moreover, while the ALJ finds plaintiff suffers the severe impairment of chronic liver disease (Tr. 13) he then concludes, "There is little objective documentation of a serious problem with his liver disease, other than claimant's own subjective allegations, which I find to be less than fully credible." (Tr. 16). This completely contradicts the medical evidence of record. It is undisputed that plaintiff suffers Hepatitis C. (Tr. 119, 120, 145). Interferon treatment was recommended but plaintiff stated he had no money to pay for it. As cited by plaintiff, SSR 96-7p makes it clear the ALJ,

> ...must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment....The individual may be unable

to afford treatment and may not have access to free or low-cost medical services. (SSR 96-7p at 7). This is exactly what the ALJ appears to have done.

Next, plaintiff complains the ALJ failed to identify his functional limitations/restrictions and assess his work-related abilities on a function-by-function basis. The Court agrees. For example, plaintiff testified he could not sit longer than twenty (20) minutes without getting tired. (Tr. 30-31). Upon examination on June 7, 2000, Dr. Schaffer noted "Patient appears to be rather shaky and he is very slow to walk. He is in no acute distress, but his general level of strength appears diminished and he is somewhat gaunt in appearance." (Tr. 147). Critically, the ALJ acknowledged the existence of non-exertional impairments of gout and liver disease which would preclude use of the Grids but then found plaintiff's gout to be under control with medication and found little objective documentation of a serious problem with his liver disease (Tr. 16), even though he earlier concluded the liver disease was a severe impairment which caused fatigue and diarrhea, possible non-exertional impairments themselves. (Tr. 13). Further, plaintiff suffers from Hepatitis C, a disease which causes fatigue. (*See* plaintiff's brief at p. 12, citing the *Merck Manual of Diagnosis of Therapy*). The ALJ was bound to assess the non-exertional side effect of fatigue and its effect on plaintiff's abilities including whether plaintiff would be able to work eight hour days. Before there can be a determination of no non-exertional impairments, thereby allowing use of the Medical-Vocational Guidelines, there must be some analysis of plaintiff's complaints of fatigue. In light of the undisputed evidence of plaintiff's liver disease and/or Hepatitis C, the record (ALJ) must reflect the basis for any determination that no non-exertional impairments exist. The record does not reflect such.

V.
RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be REVERSED and the case be REMANDED for further administrative findings at Step 5, possibly including the taking of testimony from a Vocational Expert consistent with this Report and Recommendation.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 2nd day of March 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D).  When service is made by mail or electronic means, three (3) days are added after the prescribed period.  Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).